# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALTERNATIVES UNLIMITED, INC., | : : : | No. 1:12-CV-1821 |
| Plaintiffs, | : : | Hon. John E. Jones III |
| v. | : : | |
| DREW SCHUCKMAN, MARY RAMIREZ, JUDY SHOPP, and RON TOMALIS, | : : : : | |
| Defendants. | : | |

## **MEMORANDUM**

## **February 7, 2013**

## I.  INTRODUCTION

Presently pending before the Court is the Motion to Dismiss (doc. 12) filed by Defendants Drew Schuckman, Mary Ramirez, Judy Shopp and Ron Tomalis (collectively, "Defendants"). The Motion has been fully briefed (docs. 22, 25, 28) and is thus ripe for review. For the reasons articulated herein, the Court will grant the said Motion.

## II. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to

relief above the speculative level . . . ." *Victaulic Co. v. TIeman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than a "sheer possibility." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later expounded upon and formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a Rule 12(b)(6) motion to dismiss. *Iqbal*, 129 S. Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8

"does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## III. BACKGROUND

In accordance with the standard of review applicable to a Rule 12(b)(6) Motion to Dismiss, the following facts are derived from the Complaint and are viewed in the light most favorable to the Plaintiff.

In September of 2000, Plaintiff Alternatives Unlimited, Inc. ("AU") obtained approval from the Pennsylvania Department of Education ("PDE") to operate Alternative Education for Disruptive Youth ("AEDY") programs within the Commonwealth. (Doc. 1, ¶¶ 15-16). On January 14, 2010, Defendant Drew Schuckman ("Schuckman"), an employee of PDE tasked with coordinating the Commonwealth's AEDY program, conducted an inspection of AU's school at the Tri-County Learning Academy. (*Id.* ¶¶ 21). During this inspection, Schuckman determined that AU was not in compliance with AEDY regulations. (*Id.* ¶ 24). Schuckman communicated this non-compliance with school districts that had contracted with AU for other AEDY and non-AEDY programs. (*Id.* ¶¶ 27, 32).

AU's AEDY renewal application was reviewed in February of 2010 and found to "represent a lack of understanding of program requirements". (*Id.* Ex. C). On or about February 17, 2010, AU's attorney, Mr. Aaron Plasco, sent a letter to Schuckman outlining AU's position with regard to the AEDY application. (*Id.* Ex. A). In this letter, Plasco accused Schuckman of incompetence, hostility, animosity, holding a vendetta against AU, and meddling in AU's affairs. (*Id.* Ex. A). Toward the end of the letter, Plasco also issued a veiled threat of legal action if Schuckman did not comply with Plasco's requests.[1] (*Id.* Ex. A).

On or around March 3, 2010, Plaintiff's agents met with PDE staff to discuss AU's alleged non-compliance. (*Id.* Ex. C). AU alleges that at this meeting, Defendant Judy Shopp ("Shopp"), another PDE employee, suggested that Plasco should submit an apology for his February 17 letter or, alternatively, that AU should remove Plasco as counsel. (*Id.* ¶ 36). AU did not remove Plasco as counsel nor did Plasco submit an apology. (*Id.* ¶ 39). On March 8, 2010, PDE supplied AU with information regarding the deficiencies AU needed to address to successfully renew its AEDY approval. (*Id.* Ex. C). AU submitted a revised renewal application

---

[1] The relevant paragraph from Mr. Plasco's letter reads:

> There is a tort called interference with a business relationship which you have appeared to have engage(sic) in. Intentional torts are not covered by governmental immunity. I strongly advise you to stop acting outside the scope of your employment. My next communication will not be a letter.

on April 16, 2010, and PDE conducted compliance monitoring visits at each of AU's three AEDY sites during the week of May 10, 2010. (*Id.*). On or about June 3, 2010, PDE determined that these inspections clearly revealed that AU had taken no efforts to comply with the AEDY regulations. (*Id.*). PDE therefore denied AU's renewal application. (*Id.*).

On or about June 24, 2010, AU appealed PDE's denial of its renewal application through the administrative appellate process. (*Id.* ¶ 56). AU had difficulty finding legal representation but ultimately resolved this issue and filed a prehearing statement including a list of potential witnesses on January 21, 2011. (*Id.* ¶ 60). The appeal hearing was originally scheduled for April 25, 2011 but was postponed until October 5, 2011 due to the health of one of the parties. (*Id.* ¶ 61). AU's counsel contacted PDE's counsel for the first time on September 29, 2011 to confirm the attendance of Defendants Shopp and Ramirez at the October hearing. (*Id.* ¶ 62). At this time, AU's counsel learned that Shopp and Ramirez were no longer employed with PDE and that because PDE's counsel did not believe their testimony to be relevant to the proceedings, PDE had not secured their attendance at the hearing. (*Id.* ¶ 64). AU sought a continuance on October 3, 2011, indicating that it had just learned two "key witnesses" would not be available at the hearing. (*Id.* ¶ 65). The hearing officer denied that motion and AU's subsequent motion for

reconsideration, concluding that AU had ample time to secure a subpoena and had not shown good cause for its failure to do so. (*Id.*¶¶ 66-70). AU did not appear at the October 5, 2011, and PDE's motion to dismiss the appeal was granted. (*Id.* ¶ 71). Although AU possessed a statutory right of appeal to the Commonwealth Court of Pennsylvania pursuant to 42 PA. CONS. STAT. § 763(a)(1), AU chose not to pursue this right.

Plaintiff then commenced this action by filing a Complaint (doc. 1) on September 11, 2012, alleging violations of Plaintiff's constitutional rights to due process, equal protection, and free speech. The Complaint also includes state law claims for intentional interference with a contractual relationship, defamation, and civil conspiracy. These claims all stem from the denial of Plaintiff's application for renewal of its AEDY approval. The Defendants filed the instant Motion to Dismiss (doc. 12) on December 12, 2012. The Motion has since been fully briefed (docs. 22, 25, 28) and is ripe for disposition.

## IV.   DISCUSSION

In its five-count Complaint, the Plaintiff asserts claims for violation of its rights to substantive and procedural due process, equal protection, and free speech against all Defendants in their official and individual capacities (Counts I and II, respectively), state law claims for intentional interference with a contractual

7

relationship and defamation against Defendant Schuckman (Counts III and IV, respectively), and a state law claim for civil conspiracy against all Defendants in their individual capacities (Count V). The Defendants, in their motion and supporting papers, assert that each of these claims fail as a matter of law. We address each of the Plaintiff's claims *seriatim*.

A.  **Procedural Due Process**

In its procedural due process claim, the Plaintiff contends that it has a constitutionally protected property interest in the continued approval of its AEDY status. The Plaintiff asserts that it was deprived of this right without adequate procedural safe guards in violation of the Fourteenth Amendment. (Doc. 1, ¶ 79). It is settled law that a claim for violation of procedural due process must establish first, that the right deprived was a constitutionally protected right; and second, that there was a lack of adequate procedural safeguards to assure that right is not erroneously deprived. *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). It is also well settled that the procedural due process analysis requires a balancing of the private interests at stake, the risk of erroneous deprivation of those private interests compared to the probable value of enhanced procedural safeguards, and the public interests sought to be protected. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Assuming *arguendo* that the right to act as an AEDY

provider is a constitutionally protected property interest, we nonetheless conclude, through application of the *Mathews* balancing test, that the Plaintiff was provided more than adequate procedural safeguards.

In the instant case, we cannot conceive of additional procedural safeguards which would not unduly burden the government. Indeed, on the facts before us, we cannot but conclude that the risk of erroneous deprivation is incredibly slight and that additional procedural safeguards would seemingly be of little or no value. AU received notice of its apparent non-compliance and was provided the opportunity to meet with PDE to discuss that notice in March of 2010. (Doc. 1, ¶ 36). AU was thereafter given the opportunity to correct its non-compliance before PDE rendered a final decision. (*Id.* ¶ 41). Further, after PDE denied AU's approval on June 3, 2010, AU failed to exercise its rights to an administrative hearing by failing to appear and further failed to pursue its statutory right of appeal to the Commonwealth Court. (*Id.* ¶¶ 56, 71). AU thereafter brought this lawsuit.

The Third Circuit has held that the opportunity for a full judicial process to challenge an administrative decision is adequate to protect procedural due process. *See Rogin v. Bensalem Twp*, 616 F.2d 680, 694-95 (3d Cir. 1980). Here, several rights of appeal and numerous opportunities to be heard were offered to the Plaintiff; indeed, the Plaintiff had multiple and separate avenues for challenging the administrative decision available to it and simply failed to fully exercise those

rights. Apparently the denial of a continuance so inflamed the Plaintiff that it summarily ceased its participation in a process designed to afford it the full opportunity to appeal the adverse decision. Having done so, Plaintiff now emerges and seeks relief in this Court. However, it is neither the purpose of the Fourteenth Amendment nor the Court's prerogative to remedy the Plaintiff's failure to take advantage of those available procedures. We therefore conclude that the Plaintiff has failed to state a claim for violation of procedural due process.

B.  **Substantive Due Process**

Plaintiff's Complaint raises substantive due process arguments based on two central theories: first, that the governing statute was unconstitutionally vague and second, that the Defendants' decisions were based on arbitrary and capricious grounds. A review of both of these claims reveals that, like the procedural due process claim, they are simply without merit.

First, with respect to the content of the regulations themselves, the Plaintiff argues that the regulations governing administration of the AEDY program are so void as to leave all discretion in the hands of the PDE employees, in violation of its right to substantive due process. However, as the Defendants correctly observe, in order to establish that an economic regulation is unconstitutionally vague, a plaintiff must overcome a heightened burden as compared to challenging criminal statutes because the subject of an economic regulation is limited and businesses

have the opportunity to consult the regulators and regulations before acting. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). "Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." *Id.* at 498. Thus, the Plaintiff must sufficiently plead that the regulation at issue is so vague as to be a virtual failure of notice of the conduct sought to be regulated. *See id.*

The Plaintiff alleges that the total lack of detailed requirements for the AEDY administrative review process renders the regulations unconstitutionally vague. However, the Plaintiff's own arguments are defeated by the attachments to its Complaint. Plaintiff's Exhibit E includes the 2009/2010 guidelines for the AEDY program. (Doc. 1, Ex. E). The guidelines establish twelve program requirements (doc. 1, ex. E, pp. 11-13), set forth definite "performance measurement and accountability" standards (doc. 1, ex. E, pp. 13-15), articulate in detail the review process, and provide for reevaluation every three years (doc. 1, ex. E, p. 20). The Complaint itself avers that these guidelines list "logistical requirements a program must meet in order to be qualified as an AEDY program." (Doc. 1, ¶ 83). The presence of requirements for approval belie the Plaintiff's conclusory allegations of "unchecked and unguided discretion." We simply cannot conclude that such detailed regulations are so "vague and indefinite" as to be

unintelligible. *See A.B. Small Co. v. Am. Sugar Ref. Co.*, 267 U.S. 233, 238 (1925). Therefore, the claim of unconstitutional vagueness will be dismissed.

The Plaintiff also contends that the Defendants violated its substantive due process rights by acting in an arbitrary and capricious manner in denying its application for AEDY status renewal, although this claim is largely unexplored by either party. In order to establish that the Defendants' executive action violated constitutional guarantees of substantive due process, the Plaintiff must plead that the Defendants' actions were so extreme as to "shock the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). This standard encompasses only the "most egregious official conduct." *Id*. The Plaintiff's Complaint simply fails to state facts satisfying this heightened pleading bar.

The only action complained of in support of the substantive due process claim is the allegedly arbitrary denial of Plaintiff's renewal application. The denial occurred after several meetings and inspections where AU was given guidance on how to comply with AEDY regulations and several opportunities to come into compliance with that guidance. The Plaintiff's Complaint concedes that the Defendants provided numerous explanations for the denial of AEDY provider status. Even accepting the veracity of all of the Plaintiff's allegations and drawing all reasonable inferences therefrom, we cannot conclude that the Defendants' conduct in denying the renewal application was so arbitrary and unreasonable as to

constitute egregious, conscience-shocking behavior. Therefore, we conclude that the Plaintiff has failed to state a substantive due process claim and that claim shall also be dismissed.

### C. Equal Protection Claim

Plaintiff's equal protection claim contends that the Defendants singled out Plaintiff and denied the renewal application because of Plaintiff's status as an out-of-state education provider. (Doc. 1, ¶¶ 101-109). To state a claim for violation of equal protection a plaintiff must show the defendant has "irrationally distinguished between two similarly situated classes." *Rogin v. Bensalem Twp.*, 616 F.2d 680, 689 (3d Cir.1980). Mere recitations of the elements of a claim do not meet the standard required to move the claim from possible to plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff's complaint is devoid of any facts demonstrating that in-state AEDY providers have been treated differently than out-of-state AEDY providers by the Defendants or otherwise showing that the Defendants have distinguished between two similarly-situated classes. Plaintiff has simply alleged, in conclusory fashion, that the Defendants' denial of the Plaintiff's application was based on "their prejudice against out-of-state businesses" and their "distaste for out-of-state education providers." (Doc. 1, ¶¶ 105, 109). Plaintiff has not alleged how any similarly situated in-state providers have been given preferential treatment as

compared to out-of-state providers of AEDY services. Plaintiff has entirely failed to allege sufficient facts which would entitle it to relief and we will therefore dismiss the Plaintiff's equal protection claim.

D. **First Amendment Retaliation Claim**

In its final constitutional claim, the Plaintiff contends that the Defendants denied the AEDY application in retaliation for a letter sent to Schuckman by the Plaintiff's attorney, Aaron Plasco, on behalf of the Plaintiff. (Doc. 1, ¶¶ 112-114). The Plaintiff asserts that because the denial of their renewal application followed the letter, it has necessarily stated sufficient facts to support a First Amendment retaliation claim.

In order to state a claim for First Amendment retaliation, a plaintiff must allege: (1) constitutionally protected conduct, (2) the retaliatory action would be sufficient to deter a reasonable person from exercising that protected conduct, and (3) a causal connection between the protected conduct and the retaliation. *Thomas v. Independence Tp.*, 463 F.3d 285, 296 (2006). Without all three elements, the claim is deficient and dismissal is proper. *Id.*

Beyond conclusory statements, there are not sufficient facts pled to move this claim from possible to plausible. The Plaintiff has not alleged or otherwise established that Plasco's inflammatory letter is considered protected speech for First Amendment purposes or that the denial of the renewal application would be a

14

sufficient deterrent to a person of reasonable firmity. Further, and in our view most critically, beyond temporal arrangement, the Plaintiff has pled no facts which establish, or from which we might reasonably infer, a causal link between the denial of the application and the alleged protected conduct. The decision to deny Plaintiff's application was made by Defendant Ramirez in June while the letter was sent to Defendant Schuckman the previous February. Beyond this, Plaintiff has not even alleged that Defendant Ramirez knew of the letter's existence. On these facts, we cannot but conclude that the Plaintiff has failed to establish the requisite factual allegations to support a claim of First Amendment retaliation.

### E. State Tort Claims

Lastly, we consider the Plaintiff's state law claims raised in Counts III, IV, and V. The Plaintiff alleges that the Defendants collectively acted in a civil conspiracy to deny Plaintiff's AEDY application, that Defendant Schuckman intentionally interfered with Plaintiff's contractual relationships with schools located in the Commonwealth, and that Shuckman defamed the Plaintiff in the process. To these claims, the Defendants raise the defense of sovereign immunity. For sovereign immunity to apply, the Defendants' alleged tortuous actions must have occurred within the scope of their employment with the state and must not be within the nine statutory exceptions where the Commonwealth has waived its immunity. *See* 42 PA. CONS. STAT. §§ 8501, 8522. Because we ultimately find that

the Defendants were each acting within the scope of their employment at the time of the complained-of actions, we conclude that sovereign immunity precludes the Plaintiff's state law claims.

To be within the scope of employment, the conduct must be "of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer." *Larsen v. State Employees' Retirement Sys.*, 553 F. Supp. 2d 403, 420 (M.D. Pa. May 15, 2008). The claims against Schuckman for defamation and intentional interference with a contractual relationship stem from Schuckman's communications to other school districts regarding AU's alleged non-compliance with AEDY regulations. At the time of the alleged communication, "Schuckman was the State Coordinator for the AEDY program for PDE in the Student and Community Services Department." (Doc. 1, ¶ 20). The communications at issue were to inform Plaintiff's client schools that AEDY funding would no longer be available due to AU's failure to secure renewal approval. (Doc. 1, ¶ 27). Plaintiff has not alleged facts which would take this communication outside the scope of Schuckman's employment. Based on Plaintiff's allegations, it is clear Schuckman was acting within the scope of his employment and that sovereign immunity precludes these claims.

Similarly, Plaintiff's claim of civil conspiracy is based on the collective

Defendants' actions conducted during the course of their duties as employees of PDE. Plaintiff alleges the denial of its renewal application is the cause of injury and the goal of the civil conspiracy. (Doc. 1, ¶ 145). The Complaint alleges Defendant Schuckman's performance of the inspection, Defendant Shopp's appearance at a PDE meeting with AU, and Defendant Ramirez's communication of the denial are the acts committed in furtherance of the conspiracy. (*Id.* ¶ 147). The acts of inspecting AEDY programs, processing AEDY applications, and representing PDE in meetings are part of the duties expected of the Defendants. Plaintiff admits the Defendants had "distinct roles in the approval process" and "worked together in the AEDY approval process." (*Id.* ¶ 146). Plaintiff has made no allegations that these actions occurred outside of the time and space limitations of the Defendants' employment or that the Defendants did not have at least a partial intent to serve the employer. The claimed tortuous action is thus within the scope of employment.

Because the Plaintiff has not alleged that any of the statutory exceptions to sovereign immunity would apply and the facts establish that the complained-of conduct occurred within the scope of the Defendants' employment, sovereign immunity is therefore a complete defense.[2] Thus, the claims of defamation,

---

[2] Plaintiff contends that "willful misconduct" is outside the sovereign immunity granted by 42 PA. CONS. STAT. § 8521 by citing to 42 PA. CONS. STAT. § 8550. (Doc. 25, p. 11). Plaintiff has failed to ascertain that § 8550 is only applicable to local agencies and employees. The

17

tortuous interference with a contractual relationship, and civil conspiracy do not state a claim for which relief can be granted and shall be dismissed.

## V. CONCLUSION

It is clear from the face of the Complaint that the Plaintiff had the opportunity to pursue renewal of the AEDY application through administrative and judicial procedures before bringing this action and had multiple avenues available to it to challenge the initial denial of its application. Utilizing these available measures may have led to renewal of the AEDY application, thereby negating this controversy in its entirety. However, why these avenues were not explored is of little matter to the case at hand. For the reasons described above, we conclude that the Plaintiff has failed to plead sufficient facts to support any of its constitutional claims against the Defendants. Further, consistent with our above discussion, we conclude that the Plaintiff's state law claims are barred by the doctrine of sovereign immunity.

Although we find that the Plaintiff's Complaint is patently deficient, and we harbor doubts about the Plaintiff's ability to remedy those deficiencies in any event, we will nonetheless grant the Plaintiff leave to amend its constitutional

---

Defendants are employees of the Commonwealth and therefore sovereign immunity can only be pierced through the exceptions found at 42 PA. CONS. STAT. § 8522.

claims, in accordance with the stated policy of this Circuit, to the extent that the Plaintiff possesses particularized facts which, if true, support its claims for relief consistent with this opinion. *See Fletcher-Harlee Corp. v. Pote Concrete Contrs., Inc.*, 482 F.3d 247, 251-52 (3d Cir. 2007) ("Our precedent supports the notion that in civil rights cases district courts must offer amendment – irrespective of whether it is requested – when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."). However, because we find that the Plaintiff's state law claims are precluded by the doctrine of sovereign immunity and thus no amendment could remedy this preclusion, leave to amend the state law claims is denied. An appropriate order shall issue.